STATE of Iowa, Appellee,

v.

**Tommie Robert BOLEYN, Appellant.**

No. 95–876.

Supreme Court of Iowa.

April 17, 1996.

Brad V. Driscoll of Law Office of Brad V. Driscoll, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Angelina M. Smith, Assistant Attorney General, and W. Wayne Saur, County Attorney, for appellee.

ANDREASEN, Justice.

Tommie R. Boleyn was convicted of operating while intoxicated (OWI), second offense, in violation of Iowa Code section 321J.2 (1993) and driving while his license was barred in violation of Iowa Code section 321.561. On appeal, he contends that the district court erred in failing to grant his motion for judgment of acquittal for lack of showing that he was operating a motor vehicle. Although Boleyn was not operating the vehicle when encountered by police officers, we find sufficient circumstantial evidence that Boleyn had operated the vehicle while intoxicated. Accordingly, his convictions are affirmed.

### I. Background Facts and Proceedings.

In the evening of September 3, 1994, officer David Bloem of the Oelwein Police Department found Boleyn sleeping in the driver's seat of a vehicle parked in a cemetery. Boleyn was wearing his seat belt, slumped over the steering wheel, with an open bottle of beer between his thighs. The keys were in the ignition, but the engine was not running.

In an attempt to arouse Boleyn, the officer knocked on the driver's side window, but received no response. Boleyn did not awaken until the officer shook him by the shoulders several times. When Boleyn awoke, the officers noticed a definite odor of alcohol. Boleyn's eyes were watery and bloodshot, his speech was slurred, and he seemed confused. When exiting the vehicle, Boleyn stumbled and staggered, almost falling down. When asked why he was in the cemetery, he replied, "I drove out here to see my dead father." When asked where he started driving from, he stated Maynard, the town in which he lives.

Boleyn, upon failing a field sobriety test and later declining to provide a body specimen for analysis, was charged with operating while intoxicated and operating a motor vehicle while his license was barred. Boleyn was previously convicted of OWI in 1991 and his license was barred at the time of his arrest. *See* Iowa Code § 321.560. Following a bench trial, Boleyn was found guilty of both offenses and sentenced accordingly.

### II. Standard of Review.

Our scope of review is for correction of errors at law. Iowa R.App.P. 4. On review of a ruling on a motion for judgment of acquittal we view the evidence in the light most favorable to the State. Iowa R.App.P. 14(f)(2). We accept any legitimate inferences that may reasonably be deduced from the evidence. *State v. Weaver,* 405 N.W.2d 852, 853 (Iowa 1987). We uphold the denial of a motion for judgment of acquittal if there is any substantial evidence in the record supporting the charges. *Id.* Substantial evidence is evidence which would convince a rational trier of fact the defendant is guilty of the crimes charged beyond a reasonable doubt. *Id.*

### III. Operating While Intoxicated.

The offense of operating while intoxicated consists of two essential elements: (1) the operation of a motor vehicle (2) while under the influence of alcohol. Iowa Code § 321J.2. Boleyn contends there is insufficient evidence to prove he was operating a motor vehicle while intoxicated the evening he was arrested. He urges that sleeping in a motionless vehicle with the engine not run-

ning does not constitute operation of a motor vehicle.

■ We have approved the definition of "operate" as "the immediate, actual physical control over a motor vehicle that is in motion and/or has its engine running." *Munson v. Iowa Dep't of Transp.*, 513 N.W.2d 722, 724–25 (Iowa 1994); *see also State v. Murray*, 539 N.W.2d 368, 369 (Iowa 1995). In *Munson*, we addressed whether the arresting officer, pursuant to our implied consent law, possessed reasonable grounds to believe Munson was operating a motor vehicle while intoxicated. *Munson*, 513 N.W.2d at 723. Munson was found asleep behind the steering wheel of his vehicle parked in a private parking area. *Id.* The keys were in the ignition, the radio on, but the engine was not running. *Id.* at 723–24. We held that, as a matter of law, there was no substantial evidence that the officer had reasonable grounds to believe Munson was operating a vehicle at the time he was observed in the parking lot. *Id.* at 725. Likewise, we conclude that Boleyn, who was sleeping in a motionless vehicle with the engine not running, was not operating a vehicle when he was approached by the officers.

■ This conclusion, however, does not end the inquiry. The operation of a motor vehicle by a defendant charged with operating while intoxicated may be established by circumstantial evidence as well as direct evidence. *State v. Braun*, 495 N.W.2d 735, 739 (Iowa 1993). Circumstantial and direct evidence are equally probative. Iowa R.App.P. 14(f)(16).

In *Munson* we also considered whether the officer had reasonable grounds to believe Munson operated his vehicle while intoxicated before he was observed in the parking lot. *Munson*, 513 N.W.2d at 725. Although Munson admitted later that he had driven the vehicle to the parking lot and had not drunk anything after parking his vehicle, this admission was not made to the officer prior to his invoking the implied consent law. *Id.* We concluded "that at the time the officer invoked implied consent he did not have reasonable grounds to believe that Munson had been operating while intoxicated." *Id.*

In *Braun*, we also addressed whether the arresting officer had the requisite reasonable grounds under the implied consent law to believe Braun had operated his vehicle in an intoxicated condition. *Braun*, 495 N.W.2d at 739. Braun was found asleep at the steering wheel of a vehicle parked in the middle of the highway with the engine not running. *Id.* at 737. We found an abundance of circumstantial evidence that Braun had driven to the location where officers found him, and had driven there in an intoxicated condition:

> Braun was asleep in the driver's seat, with all of the controls within his reach. The car was dangerously parked in the middle of an undivided highway. [The officer] did not see any other person walking along the highway away from the car. No alcohol containers were found in the car nor were seen on the ground. Braun appeared drunk and [the officer] smelled alcohol on his breath. Finally, Braun admitted at the scene … and again at the public safety building that he had drunk intoxicants and then driven to the location on [the highway].

*Id.* at 739.

■ The reasonable grounds test is determined under the facts and circumstances known to the officers at the time the implied consent law is evoked. *Id.* at 738. Here, Boleyn contests the sufficiency of the evidence supporting the verdict, not the invocation of the implied consent statute. Therefore all the evidence is considered in determining whether he had operated the vehicle while intoxicated prior to the arrival of the officers. *See State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980).

At the time of his arrest, Boleyn stated that he had drunk "one quart" of beer, and had started drinking at home. The only alcohol container in the vicinity was the three-quarters full thirty-two ounce bottle of beer between his thighs. At trial, he admitted that he started drinking at noon and consumed between six and twelve beers before going to the cemetery. He further admitted that he could feel the effects of the alcohol when he traveled to the cemetery. There is substantial evidence that Boleyn

was intoxicated while en route to the cemetery.

At trial, Boleyn claimed that his son drove him to the cemetery. His son testified that he drove his stepfather to the cemetery but walked away about ten or fifteen minutes later. Prior to his arrest, Boleyn made no indication that someone else had driven the vehicle to the cemetery. Rather, he stated explicitly, "I drove out here to see my dead father." Furthermore, no one was observed walking away from the vehicle. It was not until Boleyn was arrested and taken to the police station, an hour after his initial contact with the officers, that he claimed his son drove the vehicle to the cemetery. We grant considerable deference to the district court's findings on the credibility of witnesses. *State v. Evans*, 495 N.W.2d 760, 762 (Iowa 1993); *see State v. Frake*, 450 N.W.2d 817, 818–19 (Iowa 1990). We believe the court, as the fact-finder, acted within its province in rejecting Boleyn's delinquent and self-serving claim and the corroborative testimony of his son.

After our review of the record, considered in the light most favorable to the State, we find substantial evidence that Boleyn had driven to the cemetery in an intoxicated condition. The fact that he shut off the engine before he was observed by officers does not nullify his prior unlawful operation of the vehicle. Accordingly, we affirm Boleyn's conviction of operating while intoxicated, second offense.

### IV. *Driving While Barred.*

The offense of driving while barred is committed when a person convicted as an habitual offender operates a motor vehicle during the period their license is barred. Iowa Code § 321.561. Boleyn's license was barred at the time the present OWI offense was committed. Because there is substantial evidence that Boleyn drove to the cemetery, his conviction for driving while barred is also affirmed.

**AFFIRMED.**

All justices concur except SNELL, J., who dissents.

SNELL, Justice (dissenting).

I respectfully dissent.

The majority has crossed the demarcation line between statutory interpretation and fact finding. As such, the reasoning used sounds in the working place of a jury room instead of a judicial library. A practical result may have been reached, but, in law it must be supported by a statute that makes it law. Here, that support is missing.

We are dealing with a criminal statute, which we still say must be strictly construed. *See State v. Ahitow*, 544 N.W.2d 270, 273 (Iowa 1996). A crime is created by the actual words used by the legislature, not by what ought to have been said by the legislature or by substituted words of the same genre. Iowa R.App.P. 14(f)(13); *see Henriksen v. Younglove Constr.*, 540 N.W.2d 254, 258–59 (Iowa 1995). Furthermore

[a] judge must not rewrite a statute, neither to enlarge nor contract it. Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation.

Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 417 Colum.L.Rev. 527, 533 (1947).

The crime of operating while under the influence of alcohol is established by the wording of Iowa Code section 321J.2(1):

1. A person commits the offense of operating while intoxicated if the person operates a motor vehicle in this state in either of the following conditions:

a. While under the influence of an alcoholic beverage or other drug or a combination of such substances.

b. While having an alcohol concentration as defined in section 321J.1 of .10 or more.

The significant words of the statute in this case are "operating" and "operates." Both words are words of present action, not past action. The crime is committed by presently operating, not by having operated sometime in the past. This is why we have been careful to require, in our prior cases, evidence that the defendant was currently oper-

ating a motor vehicle while intoxicated. We have assiduously clung to our assigned task of deciding the meaning of "operates" and then applying it to the facts of the case. In *State v. Weaver*, 405 N.W.2d 852, 853 (Iowa 1987), we found "operating" by the defendant who was found parked in the middle of the road with the engine running. We also approved the uniform instructions defining "operates" and "operating," as follows:

> The term "operates," as used in these instructions, means to have the immediate, actual physical control over the operating mechanisms of a motor vehicle that is in motion or has its engine running and may include minimal acts of control or activation of mechanical aspects of the vehicle.

> A person is "operating" a motor vehicle, as that phrase is used in these instructions, when the person is in a position to have present or potential capability to activate or direct the movements of the vehicle regardless of whether the person is exercising that capability at the time of the alleged offense.

*Weaver*, 405 N.W.2d at 855. Both instructions carefully track the statutory language by requiring present action by the defendant and the motor vehicle.

In the early case of *State v. Overbay*, 201 Iowa 758, 759, 206 N.W. 634 (1925), we upheld a conviction for operating while intoxicated where the defendant was operating the engine while a companion pushed the car from behind. In *State v. Webb*, 202 Iowa 633, 637, 210 N.W. 751, 752 (1926), the defendant was operating when he was stopped by police after starting the engine but before proceeding down the road. The defendant in *State v. Fox*, 248 Iowa 1394, 1399–400, 85 N.W.2d 608, 611 (1957), was operating when the engine was running, he had one foot on the brake, and the transmission was in drive.

Conversely, we have held, as cited by the majority, in *Munson v. Iowa Department of Transportation*, 513 N.W.2d 722, 724–25 (Iowa 1994), that the defendant who was sleeping in a motionless vehicle with the engine not running was not operating a vehicle and as a matter of law could not be convicted of violating Iowa Code section 321J.2.

The legislature has chosen the language of section 321J.2 with good reason, in order to avoid an open ended criminalization of every incidence of past driving while intoxicated, no matter how many days, months, or years ago, with its due process implications.

The majority decides the *Munson* analysis does not end the inquiry and proceeds to convict defendant Boleyn on the ground he had operated the motor vehicle while intoxicated prior to the arrival of the police officers. Thus, a new statute has been created by substituting into section 321J.2 the words "had operated" for "operates." The present tense of the statute has now become past tense. A new, broader and open ended crime has thus been created by seemingly innocuous language switching.

The majority attempts to justify this legislation on the basis of circumstantial evidence found at the scene. Circumstantial evidence, however, proves only those facts to which it points. Here, the circumstantial evidence is pertinent to prove Boleyn "had operated" a motor vehicle. None of the evidence, however, pertains to "operating" while intoxicated or the meaning of "operates" under section 321J.2.

The case of *State v. Braun*, 495 N.W.2d 735, 738–39 (Iowa 1993), held circumstantial evidence established that the police officer had reasonable grounds to believe the defendant was operating the vehicle while intoxicated such as to warrant invocation of the implied consent law. That law, Iowa Code section 321J.6(1)(d), differs from section 321J.2, in that the statutory language is written in the past and past perfect tense. Under the implied consent statute, consent to the withdrawal of substances is given by a person who operates a motor vehicle under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2. The withdrawal of body substances occurs at the request of a peace officer having reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321J.2. Evidence obtained under section 321J.6(1)(d) may be used for administrative purposes on the question of revocation of a driver's license, regardless of its admissibil-

ity to prove a crime under section 321J.2. This permitted logical use of evidence legally gathered under section 321J.6(1)(d) does not siphon the language and legal effect of section 321J.6(1)(d) into section 321J.2.

What the majority has done amounts to creeping jurislation. I would reverse the convictions on the ground that the evidence fails to prove, as a matter of law, a violation of section 321J.2 by defendant.