# IN THE COURT OF APPEALS OF IOWA

No. 20-1127
Filed August 18, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**LISA MARIE DENZIN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District Associate Judge.

Lisa Denzin appeals from her conviction for operating while intoxicated, first offense. **AFFIRMED.**

Daniel J. Rothman and Nicholas A. Carda of McEnroe, Gotsdiner, Brewer, Steinbach and Rothman P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**BOWER, Chief Judge.**

Lisa Denzin appeals the district court's denial of her motion to suppress and her conviction after a bench trial of operating while intoxicated (OWI), first offense. Upon our review, we find reasonable suspicion supported the officer's request for a preliminary breath test, the district court correctly denied Denzin's motion to suppress, and we affirm Denzin's conviction.

The following recitation of the facts by the district court are fully supported by the record:

> On or about October 11, 2019, at approximately 11 p.m., Deputy [Joey] Marchant came upon a Honda Pilot, on the west-bound side of the highway (Highway 6 just east of Adel), pulled over to the left with its flashers on. Out of concern that the vehicle and driver might be stranded, Marchant pulled over to do a welfare check of the vehicle and occupant(s). There was no exhaust coming from the vehicle, but Marchant could observe that the dash light clusters were on in the vehicle. When the deputy approached the vehicle, the occupant of the driver's seat, [Denzin], rolled down the window at his request. [Denzin] was the sole occupant of the vehicle. The deputy noted the vehicle was not running at the time, but located the keys on the driver's seat.
>
> [Denzin] exited the vehicle at Marchant's request, at which time he noted the odors of alcoholic beverages emanating from her. [Denzin] indicated that she thought she was on Interstate 80. Marchant noted other signs of intoxication, including bloodshot and watery eyes, slow movements, she forgot to take her seatbelt off before trying to exit, and she dropped her cellphone as she was exiting. Her balance was unsteady, and Marchant thought she was going to fall over. Marchant asked if [Denzin] thought she should be driving, to which she responded, "No." During this time, the defendant's adult daughter arrived to get her. Marchant noticed an empty bottle of Barefoot Wine on the passenger seat, and a can of White Claw. Deputy Marchant requested field sobriety tests and a preliminary breath test, both of which [Denzin] refused. Marchant placed [Denzin] under arrest for OWI. [Denzin] was given an opportunity to make calls, and after having been read the implied consent advisory, [Denzin] refused to take a breath test.

Iowa Code section 321J.2(1)(a) (2019) provides: "A person commits the offense of operating while intoxicated if the person operates a motor vehicle . . . [w]hile under the influence of an alcoholic beverage or other drug or a combination of such substances." Section 321.1(48) provides this pertinent definition: "'Operator' or 'driver' means every person who is in actual physical control of a motor vehicle upon a highway."

*I. Was there reasonable suspicion to support the officer's request for preliminary breath test?*

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019) (citation omitted). "We examine the entire record and 'make an independent evaluation of the totality of the circumstances.'" *Id.* (citation omitted). "In doing so, we evaluate each case 'in light of its unique circumstances.'" *Id.* (citation omitted).

The question presented first is, under the facts and circumstances known to the officer at the time implied consent was invoked, whether there was reasonable grounds to believe Denzin had operated the vehicle while intoxicated. *See State v. Boleyn*, 547 N.W.2d 202, 205 (Iowa 1996). Denzin does not contest she was intoxicated while in the vehicle. She argues, however, Deputy Marchant did not have reasonable grounds to believe she had *operated* the vehicle *while* she was intoxicated. Prior cases provide some guidance.

In *Munson v. Iowa Department of Transportation*, 513 N.W.2d 722, 723 (Iowa 1994), our supreme court addressed whether an arresting officer, pursuant to implied-consent law, possessed reasonable grounds to believe Munson was

operating a motor vehicle while intoxicated. Munson was found asleep behind the steering wheel of his vehicle parked in a private parking area. *Munson*, 513 N.W.2d at 723. The keys were in the ignition and the radio on, but the engine was not running. *Id.* The court held there was no substantial evidence the officer had reasonable grounds to believe Munson was operating a vehicle at the time he was observed in the parking lot. *Id.* at 724.

In *State v. Braun*, 495 N.W.2d 735, 737 (Iowa 1993), an officer discovered Braun sleeping behind the wheel at 5:23 a.m. "parked on the yellow center line of Highway F70, a position which required oncoming cars from either direction to maneuver around it. The car was not running and the headlights were not illuminated." Braun challenged the officer's invocation of preliminary breath test, contending the officer did not have reasonable grounds to believe he had operated his car while intoxicated. *Braun*, 495 N.W.2d at 738–39. The supreme court disagreed, noting: "[T]he elements of a crime may be proven by circumstantial evidence as well as direct evidence. Direct evidence and circumstantial evidence are equally probative. Operation of the motor vehicle by the defendant may be established by circumstantial evidence." *Id.* at 739 (citation omitted). The supreme court found:

> There is an abundance of circumstantial evidence that Braun had driven his car to the location where Deputy Burmeister found him and that Braun had driven there in an intoxicated condition. Braun was asleep in the driver's seat, with all of the controls within his reach. The car was dangerously parked in the middle of an undivided highway. Deputy Burmeister did not see any other person walking along the highway away from the car. No alcohol containers were found in the car nor were seen on the ground. Braun appeared drunk and Burmeister smelled alcohol on his breath. Finally, Braun admitted at the scene where Burmeister found him and again at the

public safety building that he had drunk intoxicants and then driven
to the location on Highway F70.

*Id.*

Unlike Munson and Braun, Denzin was awake when the officer approached. She was the sole occupant of the vehicle, was buckled into the driver's seat, and the dash lights were illuminated. She told the deputy she thought she was on a completely different highway. There was an empty (or almost empty) wine bottle on the passenger seat. All these indicia allow the inference she had not been in that location for an extended time and she drove while intoxicated to come to be there; we find it unlikely this driver ran out of gas, began drinking, and was in such a state of intoxication just a few minutes later when her daughter arrived. We find upon our de novo review there was reasonable suspicion to request a preliminary breath test.

*II. Sufficiency of the evidence to support conviction.*

Denzin also maintains there is insufficient evidence she operated a vehicle to support the conviction.

When reviewing sufficiency-of-the-evidence challenges, we "consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (citation omitted). "In a bench trial, we review the district court's findings as we would a jury verdict, meaning we will affirm the verdict if supported by substantial evidence." *State v. Miller*, No. 20-0065, 2021 WL 810837, at *1 (Iowa Ct. App. Mar. 3, 2021) (citing *State v. Weaver*, 608 N.W.2d 797, 803 (Iowa 2000)).

In *Boleyn*, 547 N.W.2d at 204–05, the defendant argued the State failed to prove he was operating a vehicle when a police officer found him sleeping in the driver's seat of a vehicle parked in a cemetery. The court noted, "Boleyn was wearing his seat belt, slumped over the steering wheel, with an open bottle of beer between his thighs. The keys were in the ignition, but the engine was not running." *Boleyn*, 547 N.W.2d at 204. Our supreme court concluded "Boleyn, who was sleeping in a motionless vehicle with the engine not running, was not operating a vehicle when he was approached by the officers." *Id.* at 205. Boleyn, however, was "contest[ing] the sufficiency of the evidence supporting the verdict, not the invocation of the implied consent statute." *Id.* "Therefore all the evidence is considered in determining whether he had operated the vehicle while intoxicated prior to the arrival of the officers." *Id.*

The *Boleyn* court continued its analysis:

> At the time of his arrest, Boleyn stated that he had drunk "one quart" of beer, and had started drinking at home. The only alcohol container in the vicinity was the three-quarters full thirty-two ounce bottle of beer between his thighs. At trial, he admitted that he started drinking at noon and consumed between six and twelve beers before going to the cemetery. He further admitted that he could feel the effects of the alcohol when he traveled to the cemetery. There is substantial evidence that Boleyn was intoxicated while en route to the cemetery.
> . . . .
> After our review of the record, considered in the light most favorable to the State, we find substantial evidence that Boleyn had driven to the cemetery in an intoxicated condition. The fact that he shut off the engine before he was observed by officers does not nullify his prior unlawful operation of the vehicle.

*Id.* at 205–06.

"[C]urrent case law provides there is no 'operation' of a motor vehicle within the terms of the OWI statute unless the vehicle is in motion or the engine is

running." *State v. Hopkins*, 576 N.W.2d 374, 377 (Iowa 1998). "The evidence may fail to prove that an intoxicated defendant was in the process of operating a motor vehicle when the authorities found him or her. Nevertheless, circumstantial evidence may establish that the defendant *had* operated while intoxicated when driving to the location where the vehicle was parked." *Id.* at 377–78.

> Circumstantial evidence
>
> is the proof "of one fact, or a set of facts, from which the existence of the fact to be determined may reasonably be inferred." Circumstantial evidence involves two things: (1) "the assertion of witnesses as to what they have observed," and (2) "a process of reasoning, or inference, by which a conclusion is drawn." Circumstantial evidence "must be based upon the evidence given, together with a sufficient background of human experience to justify the conclusion."

*Id.* at 378 (citation omitted).

Here, Denzin was awake when the officer approached. She was the sole occupant of the vehicle, was buckled into the driver's seat, and the dash lights were illuminated. She told the deputy she thought she was on a completely different highway. There was an empty (or almost empty) wine bottle on the passenger seat. In addition, Deputy Marchant noted five to six ounces of alcoholic beverage in a thirty-two-ounce cup in the cup holder. Also found in the car was an empty can of an alcoholic beverage. We also note Denzin's daughter indicated Denzin called her crying and somewhat incoherent. The daughter expressed some surprise the deputy arrived at the scene before she did. When the daughter attempted to move the vehicle, they discovered it was out of gas and the battery was insufficiently charged to start the engine. The daughter indicated the Honda Pilot had a push-button start, so the fact the keys were on the driver's seat does

not detract from the inference the engine was on and the vehicle had run out of gas.

Viewing the evidence in the light most favorable to the State and all inferences arising therefrom, we find there is substantial evidence to support the conviction.  We therefore affirm.

**AFFIRMED.**